UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CLAIR PARKHILL GUEST,         )
                              )
            Plaintiff         )
                              )
v.                            )      No. 2:16-cv-00228-JHR
                              )
NANCY A. BERRYHILL,           )
Acting Commissioner of Social Security,[1] )
                              )
            Defendant         )

## MEMORANDUM DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge (i) failed to find that her mental impairments met or equaled the criteria of sections 12.02, 12.04, or 12.06 of Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), then (ii) made a flawed determination of her mental residual functional capacity ("RFC"), which (iii) undermined the relevance of the vocational expert testimony on which he relied to find her capable of working. *See* Plaintiff's Statement of Errors in Support of a

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 15, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 19.

Social Security Appeal ("Statement of Errors") (ECF No. 12) at 11-19.[3] These arguments prove unpersuasive, and, accordingly, I affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, Finding 1, Record at 1048; that she had the severe impairments of fibromyalgia syndrome, an organic mental disorder/attention deficit hyperactivity disorder ("ADHD"), an affective disorder/mood disorder, and an anxiety-related disorder/anxiety, Finding 3, *id*. at 1049; that she had no impairment or combination of impairments that met or medically equaled the severity of one of the Listings, Finding 4, *id*. at 1050; that she retained the RFC to perform light work with some physical restrictions not relevant for purposes of this decision and could understand and remember simple instructions, accomplish simple tasks on a consistent schedule to complete a workday/workweek, interact appropriately with coworkers and supervisors but not the general public, and adapt to occasional routine changes in the workplace, Finding 5, *id*. at 1051; that, considering her age (23 years old, defined as a younger individual, on her alleged disability onset date, February 28, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 1056; and that she, therefore, had not been disabled from February 28, 2012, through the date of the decision, January 13, 2015, Finding 11, *id*. at 1057-58. The Appeals Council declined to review the decision, *id*. at 1037-40, making the decision the final determination

---

[3] I refer to the page numbers found at the bottom of the pages of the Statement of Errors.

of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Secretary of Health & Human Servs.,* 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Listings Determination

The plaintiff first challenges the administrative law judge's finding that she had only moderate restrictions in activities of daily living, social functioning, and concentration, persistence, or pace, as a result of which her mental impairments neither met nor equaled the criteria of Listings 12.02, 12.04, or 12.06. *See* Statement of Errors at 11-12; Record at 1050-51.

To meet so-called "paragraph B" of those Listings, a claimant must demonstrate marked limitation in at least two of those three areas of functioning, or marked limitation in at least one of those areas together with repeated episodes of decompensation, each of extended duration. *See* Listings 12.02(B), 12.04(B), 12.06(B). The plaintiff contends that she should have been found to have marked, rather than moderate, restrictions in each of the three areas of functioning. *See* Statement of Errors at 12.

The administrative law judge explained that:

1. He found a moderate level of restriction in activities of daily living because the evidence indicated that (i) the plaintiff was "capable of performing a wide range of activities of daily living including caring for her personal needs and hygiene, cooking, cleaning, doing laundry, shopping, managing money, paying bills, and driving an automobile[,]" (ii) she cared for her two young children "without apparent difficulties," for example, getting her son ready for school, helping him with his homework, and playing games with her children, (iii) she read, watched television and movies, and went on walks two to three days a week, and (iv) she "told examiners on August 9, 2013, that she had recently gone on vacation to visit her father." Record at 1050 (citations omitted).

2. He found a moderate level of restriction in social functioning given that the plaintiff was able to shop in stores, care for her two children, interact with her fiancé and children on a

regular basis, visit her mother three to four times a week, and maintain some friendships. *See id*. at 1050-51. In addition, "[t]he evidence fail[ed] to demonstrate that the [plaintiff] has had significant difficulties interacting with treatment providers, and none of the individuals who have treated or examined her have described [her] as socially inappropriate." *Id*. at 1051.

    3.    He found a moderate level of restriction in concentration, persistence, or pace since the plaintiff was able to complete the activities of daily living he had described, and "some examiners have found [her] memory to be either intact, good, or normal, and her attention and concentration to be normal." *Id*. (citations omitted).

The plaintiff asserts that the record "contradicts" this analysis. Statement of Errors at 11. She points to:

    1.    Her reports to a treating provider, Sarah Swenson, LCSW, that she felt "overwhelmed at times with childcare responsibilities[,]" Statement of Errors at 11; Record at 769, 774;

    2.    Responses to a Mental Impairment Questionnaire by treating provider Jean M. Dowling, PMHNP, dated October 17, 2013, indicating that she had marked difficulties in social functioning and concentration, persistence, or pace, and marked episodes of deterioration or decompensation in work or work-like settings, *see* Statement of Errors at 11; Record at 881;

    3.    A letter from treating provider Nicole Betts, LMSW-cc, dated May 30, 2014, indicating that she had ongoing challenges with interpersonal relationships, ability to implement adaptive coping mechanisms, and ability to engage in consistent, daily routines, *see* Statement of Errors at 11; Record at 970;

    4.    Her testimony at her November 12, 2014, hearing that the Lamictal she took for bipolar disorder provided no relief, she received help from neighbors and others to care for her

children, she avoided grocery shopping if possible, she had difficulty with memory and concentration, lost her train of thought easily, fidgeted, and tended to be distracted and unable to focus on what she was saying or doing if there was noise outside, and she had difficulty following television programs, *see* Statement of Errors at 11-12; Record at 20-23; and

5. Her mother's testimony at hearing that she gets angry and overwhelmed, they often leave the store with nothing because she cannot make it through a shopping trip, and it is very difficult for her to be in public, *see* Statement of Errors at 12; Record at 30-31.

As the commissioner suggests, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 6, while the plaintiff identifies evidence that she believes tilts in favor of a finding of more limited functioning, that in itself is not enough to warrant remand where an administrative law judge has identified evidence indicating otherwise, *see, e.g., Huff v. Colvin*, No. 2:13-cv-378-JDL, 2014 WL 5473036, at *5 n.3 (D. Me. Oct. 27, 2014) (even when a claimant's and an administrative law judge's characterizations of the evidence are "equally reasonable," the commissioner must prevail).

That is the case here. Substantial evidence supports the administrative law judge's finding of moderate restrictions, most notably the opinions of two agency nonexamining consultants, Thomas Knox, Ph.D., dated February 18, 2013, and JoAnne Coyle, Ph.D., dated August 8, 2013, to which the administrative law judge afforded great weight. *See* Record at 43-48, 72-77, 1055-56. Drs. Knox and Coyle directly addressed the question of whether the plaintiff's impairments met or equaled Listings 12.04 and 12.06, and Dr. Coyle addressed whether they met or equaled Listing 12.02. *See id*. at 44, 73. They concluded that they did not. *See id*.[4]

---

[4] At oral argument, I asked the plaintiff's counsel why the Knox and Coyle opinions could not stand as substantial evidence of the Step 3 determination. She replied that they were nontreating sources who did not have access to the full record. She argued that the record reflected that her client's various trials of medications had not stabilized her consistently for a sufficient length of time to enable her to engage in substantial gainful activity, as reflected by her

6

Further, as the commissioner notes, *see* Opposition at 3, elsewhere in his decision, the administrative law judge pointed out that the plaintiff frequently was noted on mental status examinations to be alert and oriented with a linear and logical thought process, cooperative, with no evidence of a thought disorder, obsessions, phobias, mania, delusions, impaired judgment, auditory or visual hallucinations, or ongoing suicidal or homicidal ideations, *see* Record at 1053; *see also, e.g., id*. at 394, 400, 403, 406, 408, 411, 413, 424, 541, 717, 750, 931, 935, and that, notwithstanding her allegations of memory loss, her memory was described as intact in all spheres on multiple occasions, *see id*. at 1053; *see also, e.g., id*. at 394, 750, 754, 938, 946. "[N]ormal mental status examinations reasonably may be viewed as inconsistent with marked limitations[.]" *Ball v. Social Sec. Admin. Comm'r*, No. 2:14-cv-61-JDL, 2015 WL 893008, at *7 (D. Me. Mar. 2, 2015).

Finally, the administrative law judge addressed and discounted much of the contrary evidence to which the plaintiff points. To the extent that she relies on her own allegations and testimony, the administrative law judge deemed her not to be entirely credible, *see* Record at 1052, and she has not challenged that finding on appeal, *see generally* Statement of Errors. To the extent that she relies on her mother's testimony and the Dowling opinion, the administrative law judge supportably discounted them for the reasons discussed below. To the extent that she relies on the Betts letter, while the administrative law judge failed to address it, it is reasonably clear from his discussion as a whole that it makes no material difference.

Remand, accordingly, is not warranted on the basis of this point of error.

---

multiple psychiatric hospitalizations and work history, including a failed attempt to work at McDonald's. I queried whether any of the evidence unseen by Drs. Knox or Coyle was material. The plaintiff's counsel reiterated that Drs. Knox and Coyle, as nonexamining sources, were not in a position to reflect even minor changes that the plaintiff's treating nurse practitioner would have been able to observe in examining and speaking with her. She identified no material evidence unseen by Drs. Knox or Coyle.

7

### B. Mental RFC Determination

The plaintiff next challenges the administrative law judge's mental RFC determination on three bases: that he failed to (i) properly weigh the medical and opinion evidence of record, (ii) fully and fairly develop the record, or (iii) adequately reflect his finding that the plaintiff had moderate restrictions in concentration, persistence, or pace in his mental RFC determination. *See* Statement of Errors at 12-18. Again, I find no reversible error.

#### 1. Failure To Weigh Medical, Opinion Evidence Properly

The plaintiff alleges three respects in which the administrative law judge improperly evaluated the medical and opinion evidence of record: that he (i) mischaracterized the record with respect to her medication history, (ii) accorded little to no weight to her mother's testimony, and (iii) erred in resolving conflicts in expert opinion. *See* Statement of Errors at 12-16. I take each argument in turn.

##### a. Medication History

The plaintiff first faults the administrative law judge for emphasizing that her medications, as of August 2014, "consisted of only Lamictal[,]" which effectively controlled her symptoms, despite evidence that she had tried a myriad of medications to treat her mental disorders with limited success. Statement of Errors at 13-14 (quoting Record at 1053).

She notes that, in August 2014, her dosage of Lamictal had to be increased, *see id*. at 13; Record at 1015, and she asserts that she never improved to the point where she could engage in substantial gainful activity on a regular and continuing basis, *see* Statement of Errors at 13. In support of the latter proposition, she points to the Dowling questionnaire and Betts letter and her testimony concerning her work history, including an unsuccessful work attempt at McDonald's from June through October 2012 and an abrupt end to a prior job at Dunkin Donuts in February

2012, following which she had a breakdown resulting in a two-week hospitalization. *See id*. at 13-14.

She adds that the record corroborates her testimony concerning her work history, pointing to progress notes of Swenson indicating that she reported in September 2012 that her mood had become much less stable and she felt overwhelmed, could not tolerate being touched by anyone, and frequently isolated in bed, *see id*. at 14; Record at 446, and she reported in October 2012 that she found it increasingly difficult to tolerate being at work and felt very overstimulated in that environment, *see* Statement of Errors at 14; Record at 452. She notes that, on referral from Dowling, she was admitted to a partial mental hospitalization on October 22, 2012. *See* Statement of Errors at 14; Record at 543-44.

As the commissioner rejoins, *see* Opposition at 8-9, the administrative law judge did not mischaracterize the plaintiff's medication history. He correctly noted that she had been prescribed various psychiatric medications but that, as of August 2014, she was prescribed only Lamictal. *See* Record at 1053-54; *see also id*. at 19-20. The plaintiff does not dispute the administrative law judge's finding that "when compliant with treatment, [her] symptoms have improved[,]" Record at 1053; rather, she disputes that her condition ever improved to the point that she could engage in substantial gainful activity, *see* Statement of Errors at 13-14.

Yet, as the commissioner observes, *see* Opposition at 9-10, for that proposition, she relies on her testimony at hearing, her contemporaneous reports to treating providers, the Dowling questionnaire, and the Betts letter. To the extent that she relies on her own testimony and self-reports to providers, the administrative law judge deemed her partially credible – a finding that she does not challenge on appeal. To the extent that she relies on the Dowling questionnaire, the administrative law judge supportably discounted it for the reasons discussed below. To the extent

9

that she relies on the Betts letter, while the administrative law judge failed to address it, it is reasonably clear from his discussion as a whole that it makes no material difference.

### b. Mother's Testimony

The administrative law judge summarized both the plaintiff's mother's testimony at hearing and her statements on a third-party function report, noting, *inter alia*, that she had asserted that her daughter "had childhood temper tantrums and would lock herself in a closet[,]" "stated that the [plaintiff] has a history of a sensory disorder and has problems in grocery stores[,]" testified that her daughter was unable to work full-time, and indicated that her daughter had "a very low tolerance for stressors; . . . responds to stimuli much more strong[ly] than most people; . . . is often defensive and feels persecuted; . . . [is] negatively affected by sights, sounds, smells, and being in close quarters with too many people; . . . has a non-verbal learning disability and reads poorly; . . . [and] misinterprets social situations[.]" Record at 1055.

The administrative law judge stated that he had "given these statements little to no weight as they are from a non-medical and non-impartial source, and the degree of limitations cited [is] not substantiated in the evidence." *Id*.

The plaintiff argues that her mother's relationship with her "does not diminish, rather it enhances, the potential weight that should be accorded to her testimony as one who is closely familiar with [her]." Statement of Errors at 15. She notes that Social Security Ruling 06-03p ("SSR 06-03p") allows testimony from "other sources," such as parents, for purposes of assessing the severity of an individual's impairments and how they affect the individual's ability to function, and does not require that such individuals have medical training in order to be competent witnesses. *Id*.

Nonetheless, as the commissioner points out, the administrative law judge's handling of the plaintiff's mother's testimony comported with the requirements of SSR 06-03p. *See* Opposition at 11-12. SSR 06-03p does not require that an administrative law judge give any particular weight to the opinions or testimony of "other sources." Indeed, as concerns non-medical sources who have not seen a claimant in a professional capacity in connection with his or her impairments, "such as spouses, parents, friends, and neighbors," SSR 06-03p merely states that "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 333.

While SSR 06-03p addresses the explanation of the consideration given to opinions from certain "other sources" – specifically, medical sources who are not "acceptable medical sources" and "'non-medical sources' who have seen the claimant in their professional capacity" – it does not address the explanation of the consideration given to evidence from persons such as parents. *Id*. However, even if that section of the ruling applied to the plaintiff's mother's evidence, the administrative law judge's handling of her testimony passes muster.

With respect to other medical/professional sources, an administrative law judge need only "explain the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.

The administrative law judge did so with respect to the plaintiff's mother's testimony and written function report.[5]

---

[5] Further, as the commissioner points out, *see* Opposition at 11, while the administrative law judge was not required to do so, he supplied good reasons for his handling of the plaintiff's mother's testimony. To the extent that she testified

### c. Resolution of Conflicts in Expert Opinions

The plaintiff next contends that the administrative law judge's mental RFC determination is unsupported by substantial evidence because he (i) did not discuss the Betts letter at all, (ii) did not make clear what weight, if any, he gave either the Betts letter or Dowling questionnaire, such that it is unclear how those assessments were reflected in his mental RFC determination, and (iii) improperly accorded great weight to the agency nonexamining consultants' opinions when those consultants "did not have access to the full case record" and their "opinions are not well justified nor worthy of great weight." Statement of Errors at 16 (citing *Alcantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007)).

As the plaintiff acknowledges, *see id.*, the administrative law judge's handling of both the Dowling questionnaire and the Betts letter is governed by SSR 06-03p. Neither Dowling, a nurse practitioner, nor Betts, a social worker, is an "acceptable medical source" as defined by Social Security regulations. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."); *id.* §§ 404.1513(a), 416.913(a) (omitting nurse practitioners and social workers from list of "acceptable medical sources").

An administrative law judge need not provide "good reasons" for discounting the opinion of a "non-acceptable" treating source, as he or she must if addressing the opinion of an

---

regarding her daughter's diagnoses and ability to sustain full-time work, he properly took into account her status as a layperson. *See* SSR 06-03p at 329 ("[W]e need evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment."); 20 C.F.R. §§ 404.1527(d)(1) & (3); 416.927(a)(1) & (3) (even statements by medical sources that a claimant is disabled or unable to work are due no special significance). To the extent that she testified as to her daughter's limitations, he deemed that testimony unsubstantiated by the evidence. *See* Record at 1055.

12

"acceptable" treating source, *see*, *e.g., Robshaw v. Colvin*, No. 1:14-cv-281-JHR, 2015 WL 3951959, at *4 (D. Me. June 28, 2015). Instead, as noted above, an administrative law judge need only "explain the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p at 333.[6]

The administrative law judge's handling of the Dowling questionnaire and the Betts letter meets this standard.

The administrative law judge summarized Dowling's findings in detail, concluding: "While this psychiatric nurse practitioner has treated the [plaintiff] on multiple occasions, the degree of limitations cited is not supported in the contemporaneous treatment records, and is inconsistent with the evidence as a whole, including the State agency assessments, and the [plaintiff's] functional activities of daily living." Record at 1055.

While he did not expressly explain how much weight, if any, he gave the Dowling questionnaire, his discussion is sufficient to follow his reasoning: he implicitly gave it no weight. As the commissioner argues, *see* Opposition at 15, even if Dowling had been a "treating source," these would have been "good reasons" to discount her opinion, *see* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).

---

[6] The commissioner contends that, in characterizing Dowling and Betts as "treating providers[,]" the plaintiff tries to suggest that they are so-called "treating sources," that is, "acceptable medical sources." Opposition at 14; 20 C.F.R. §§ 404.1502, 416.902 ("*Treating source* means your own physician, psychologist, or other acceptable medical source[.]"). Yet, the plaintiff does not use the phrase "treating source" or "acceptable medical source" and refers only to SSR 06-03p in connection with her argument regarding Dowling and Betts. *See* Statement of Errors at 16. "Treating providers" is a neutral manner in which to refer to non-acceptable medical sources. Indeed, I have used that phrase to refer to Dowling and Betts.

13

In her May 30, 2014, letter, Betts, who had been treating the plaintiff since November 2013, summarized her mental health history, including her symptoms, treatment, and diagnosis of Mood Disorder, NOS [not otherwise specified]. *See* Record at 970. She stated:

> [The plaintiff] has utilized psychiatric hospitalization and a crisis unit on three occasions within the past 8 months. [She] frequently reports difficulty managing her mental health symptoms which impacts her day-to-day functioning. This writer observes ongoing challenges with [her] interpersonal relationships, ability to implement adaptive coping mechanisms and ability to engage in consistent, daily routines. [The plaintiff] has also experienced several medication changes under the care of a variety of providers including [Dowling] and CSI (providers unknown). The most recent concern related to [her] mental health was a psychiatric hospitalization on May 27, 2014 at Southern Maine Health Care related to unmanageable symptoms including alleged dissociation.

*Id*. While the administrative law judge did not discuss the Betts letter (Exhibit 13F), he cited it in setting forth the plaintiff's diagnoses, alleged symptoms, and history of mental health treatment. *See id*. at 1053. He noted that, despite the plaintiff's alleged symptoms (with respect to which he had cited, *inter alia*, the Betts letter), "she has typically been described in the record as alert, oriented, linear, logical, cooperative, friendly, relaxed, fluent, coherent, and concise with a normal mood and affect," and "some examiners have found her memory to be either intact, good, or normal, and her attention and concentration to be normal." *Id*. (citations omitted).

Further, he addressed the plaintiff's condition during the time period from late 2013 through May 27, 2014, stating:

> It was reported on June 18, 2014, that [the plaintiff's] mood was stable on Lamictal and Klonopin, and on August 15, 2014, that her mood was stable and she was compliant with medications.
>
> The [plaintiff] reported during a crisis evaluation on October 23, 2013, that she had seen her therapist earlier that day, but had not been honest with her about how she was feeling. Treating sources noted on June 18, 2014, that the [plaintiff] said her recent hospitalization was for psychosis, but that the reports say it was for factitious, hysterical, and borderline diagnoses, and that she was off of her medications at the time of admission. While not dispositive of the claim, the [plaintiff's] apparent dishonesty with treatment providers tends to undermine the credibility of her

14

> statements concerning the severity of her impairments and their impact on her ability to work.

*Id*. at 1053-54 (citations omitted).

It is clear, from the administrative law judge's discussion of the evidence overall, including his handling of the Dowling questionnaire, that Betts' opinion that the plaintiff exhibited ongoing challenges with interpersonal relationships, ability to implement adaptive coping mechanisms, and ability to engage in consistent, daily routines was discounted, except to the extent that she was found to have moderate limitations.

The administrative law judge gave great weight to the mental RFC opinions of Drs. Knox and Coyle, deeming them "well supported and consistent with the evidence as a whole." *Id*. at 47-48, 76-77, 1056. The plaintiff contends that, in so doing, he gave undue weight to the opinions of nonexamining, non-treating sources who did not have access to the full case record. *See* Statement of Errors at 16.

Yet, those facts standing alone do not prevent as a matter of law an administrative law judge from affording great weight to such opinions. Rather, "the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." *Id*. (citations omitted). *See also, e.g., Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) ("[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of

15

the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.") (citations omitted).

*Alcantara* is not to the contrary: in that case, the First Circuit held that an administrative law judge erred in relying on the opinion of an agency nonexamining, non-testifying consultant who had not reviewed two-thirds of the full case record, including material new evidence. *See Alcantara*, 257 Fed. Appx. at 334. While the plaintiff's counsel suggested at oral argument that Drs. Knox and Coyle did not have the benefit of review of material evidence postdating their opinions, she identified no such evidence. As counsel for the commissioner pointed out, the administrative law judge noted that subsequent evidence reflected improvements when the plaintiff was compliant with treatment. *See* Record at 1053-54.

### 2. Failure To Develop Record

The plaintiff next faults the administrative law judge for failing to order a consultative psychological examination as well as intelligence testing to assess the extent of her mental limitations, particularly in relation to her sensory integration problem and history of learning disability. *See* Statement of Errors at 17. She notes that the administrative law judge found that she did not have medically determinable sensory integration or learning disability impairments on the basis that the record was devoid of evidence that she had been diagnosed with sensory integration problems by an acceptable medical source or had undergone intelligence testing or received special education services in school. *See id*.; *see also* Record at 1049-50. However, she notes that she testified that she received special education services in school for a non-verbal learning disability, ADHD, and sensory processing disorder and had difficulty reading and writing,

and Dowling noted symptoms including loss of intellectual ability and difficulty thinking or concentrating. *See* Statement of Errors at 17-18; Record at 17-18, 880.

The First Circuit has recognized that administrative law judges have a general duty to develop the record, albeit less pronounced when, as here, a claimant is represented by counsel. *See, e.g., Heggarty v. Sullivan,* 947 F.2d 990, 997 (1st Cir. 1991); *Hawkins v. Chater,* 113 F.3d 1162, 1167-68 (10th Cir. 1997). As the plaintiff notes, *see* Statement of Errors at 17, when the record is insufficient to determine whether a claimant is disabled, an administrative law judge has several options available to supplement the record, including arranging for the claimant to undergo a consultative examination, *see* 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

Nonetheless, in this case, as the commissioner suggests, *see* Opposition at 17-18, the administrative law judge did not indicate that he lacked evidence to reach a determination as to whether the plaintiff was disabled. To the contrary, he had the benefit of review of voluminous mental-health evidence bearing on her abilities and restrictions during the period at issue, including treatment notes containing the results of mental status examinations, the opinions of Drs. Knox and Coyle (neither of whom indicated there was insufficient evidence to evaluate the plaintiff's mental RFC), the Dowling questionnaire, and the Betts letter. Under the circumstances, he was not obliged to send the plaintiff for a mental-health consultative examination.

3. **Failure To Account for Moderate Limitations in Concentration, Persistence, or Pace**

The plaintiff lastly challenges the administrative law judge's mental RFC finding on the basis that he failed to assess restrictions corresponding with her moderate limitations in concentration, persistence, or pace. *See* Statement of Errors at 18. For this proposition she relies on *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015), in which the United States Court of Appeals for the Fourth Circuit joined other circuits, including the Third, Seventh, Eighth, and

17

Eleventh circuits, in holding that "[a]n ALJ [administrative law judge] does not account for a claimant's limitations in concentration, persistence, and pace by restricting the [claimant] to simple, routine tasks or unskilled work." *Id*. (quoting *Mascio*, 780 F.3d at 638) (internal quotation marks omitted). She points out that the *Mascio* court noted that "the ability to perform simple tasks differs from the ability to stay on task." *Id*. (quoting *Mascio*, 780 F.3d at 638).

As the commissioner rejoins, *see* Opposition at 18-20, this court rejected a nearly identical argument in *Newcomb v. Colvin*, No. 2:15-cv-463-DBH, 2016 WL 3962843 (D. Me. July 22, 2016) (rec. dec., *aff'd* Aug. 10, 2016). In this case, as in *Newcomb*, the administrative law judge found the plaintiff not only limited to simple instructions but also able to "accomplish simple tasks on a consistent schedule to complete a workday/work week[.]" *Compare* Finding 5, Record at 1051 *with Newcomb*, 2016 WL 3962843, at *7. As in *Newcomb,* he thereby "addressed the plaintiff's ability to stay on task, materially distinguishing this case from *Mascio*[.]" *Newcomb*, 2016 WL 3962843, at *7. At oral argument, the plaintiff's counsel contended that this case is distinguishable given the plaintiff's level of mental impairment, which she argued is not fully captured in the administrative law judge's RFC finding. However, for the reasons discussed above, I have rejected the plaintiff's argument that the mental RFC determination is flawed. Accordingly, *Newcomb* is controlling.

### C. Determination That Plaintiff Capable of Performing Other Work

Finally, the plaintiff contends that the administrative law judge's Step 5 finding was unsupported by substantial evidence in that he relied on vocational testimony predicated on a flawed RFC finding. *See* Statement of Errors at 18-19. This argument hinges on the success of the plaintiff's RFC arguments, which I have rejected for the reasons discussed above. Accordingly, it forms no basis for remand. *See, e.g., Bowden v. Colvin*, No. 1:13-CV-201-GZS,

18

2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("I have rejected [the claimant's] arguments about the RFC, so this corollary argument regarding the hypothetical question [posed to a vocational expert] must fail as well.").

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 2nd day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
